IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | : CASE NO. 4:04 CR 381 |
| Plaintiff | : |
| -vs- | : SENTENCING MEMORANDUM OF |
| | : OPINION *NUNC PRO TUNC* (FOR |
| | : CLERICAL ERROR) TO 9 MAY 2005 |
| RYAN STRANGE | : (DOCKET #139) |
| Defendant | : |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 8 October 2004, defendant Ryan Strange, a former deputy with the Mahoning County Sheriff's Department who worked at the Mahoning County Jail, was charged in two counts of a three-count superseding indictment. (Docket #47).  In count one, Mr. Strange, along with several co-defendants, was charged with conspiracy to deprive Tawhon Easterly, a pretrial detainee at the jail, of his constitutional right to be free from excessive force amounting to punishment by one acting under color of state law, in violation of 18 U.S.C. § 371.  Count two charged Mr. Strange with actually depriving and/or aiding and abetting the deprivation of Mr. Easterly's constitutional right to be free from excessive force amounting to punishment by one acting under color of state law, in violation of 18 U.S.C. §§ 2 and 242.  Mr. Strange entered a not guilty plea to these charges on 3 November 2004.  On 25 February 2005, Mr. Strange appeared at a change of plea hearing, withdrew

1

his not guilty plea, and entered a plea of guilty to both counts charged in the superseding indictment.

Although Mr. Strange signed a written "Change of Plea," he did not enter into a plea agreement with the government. In fact, the Change of Plea specifically provided that:

> STRANGE and the United States have no further agreement as to sentencing in this matter and both parties understand that they and the other party are free to make whatever arguments and take whatever positions they wish at sentencing in this case.

(Docket #117, at 2). Prior to sentencing, Mr. Strange filed objections to the pre-sentence investigation report ("PSR") prepared by the United States Probation Office as well as a sentencing memorandum which set out his position about the appropriate sentence in this case and contained numerous letters filed by friends and family on his behalf. (Docket #131). The government followed with a response in opposition to Mr. Strange's sentencing memorandum. (Docket #133).

On 5 May 2005, a sentencing hearing was held with Mr. Strange, counsel for both parties, and probation officer, Allen Gold, attending. At the hearing, this Court determined that Mr. Strange's guideline range was 27-33 months (based on a total offense level of 18 and a criminal history category of I), declined to depart under the guidelines for any of the numerous reasons suggested by Mr. Strange, and, considering the advisory guideline range along with the other factors set forth in 18 U.S.C. § 3553(a), sentenced Mr. Strange to a 21 month term of incarceration. This sentencing memorandum outlines defendant's arguments and serves as an explanation, along with the transcript from the sentencing hearing, for this Court's sentence outside the guideline range.

2

## I.  FACTUAL BACKGROUND[1]

On 28 December 2001, then-deputy Ryan Strange was working at the Mahoning County Jail in his official capacity when he heard a call indicating that a fight had broken out in the jail.  Although he responded to the call, the fight had been quelled by the time he arrived.  During the fight, another deputy, Christine Kachaylo, was struck by an inmate.  After all the inmates had been secured in their cells, Ms. Kachaylo proceeded to go through the jail and identified Tawhon Easterly as the inmate who had struck her.  Mr. Easterly was taken out of his cell and escorted into the gym where at least two deputies, including Mr. Strange, willfully agreed to and did in fact use excessive force on Mr. Easterly to punish him for striking Ms. Kachaylo.  Mr. Easterly did not, at any point in time, resist or threaten the deputies in any way.  Mr. Strange's use of force was not necessary to control or contain Mr. Easterly; he admits it was done solely to punish Mr. Easterly for hitting Ms. Kachaylo and that it resulted in bodily injury to Mr. Easterly.  Mr. Strange did not complete an official report documenting his use of force on Tawhon Easterly as mandated by the Mahoning County Jail.

## II.  GUIDELINE RANGE

Because both counts involved the same victim and the same act or transaction, the two counts are grouped for the purpose of calculating Mr. Strange's offense level.  *See*

---

[1] This is taken from the sentencing hearing, the factual basis for the plea which both parties agreed would have been established beyond a reasonable doubt at trial, and sworn testimony from witnesses at two separate trials of Michael Budd, former Major of the Mahoning County Sheriff's Department.

U.S.S.G. § 3D1.2(a).  With that in mind, the PSR offense level calculations for Mr. Strange's offenses are as follows:[2]

|  |  |
|---|---|
| **Base Offense Level:** [Section 2H1.1] | 12 |
| **Specific Offense Characteristic:** [Section 2H1.1(b)(1)(B)-- Under Color of Law] | +6 |
| **Specific Offense Characteristic:** [Section 3A1.1(b)(1)-- Vulnerable Victim] | +2 |
| **Adjusted Offense Level (Subtotal):** | 20 |
| **Adjustment for Acceptance of Responsibility:** [Section 3E1.1(a)] | -2 |
| **Total Offense Level:** | 18 |

Because Mr. Strange fell into a criminal history category of I, the PSR indicated that his guideline range was 27-33 months.  The government presented no objections to the guideline range.  Mr. Strange's sole objection to the guideline calculations was that his conduct warranted a "minimal participant" role adjustment because, he claimed, he was the least culpable of the individuals in this case.[3]

The Sentencing Guidelines provide for downward adjustments ranging from two to four levels based on the defendant's role in the offense: two levels if defendant was a "minor participant" in any criminal activity; four levels if defendant was a "minimal

---

[2] Although at one point during the sentencing hearing the government stated its position that the 2001 guidelines should be used, both the probation officer and this Court applied the 2004 version of the guidelines in calculating Mr. Strange's sentence.  Neither party suggested that the two versions differed in any respect material to this case.

[3] In his objections to the PSR, Mr. Strange initially objected to the 2-level "vulnerable victim" enhancement.  However, at the sentencing hearing, Mr. Strange withdrew this objection.

4

participant" in any criminal activity; and three levels for cases in between. U.S.S.G. § 3B1.2(a) and (b). These downward adjustments apply only to defendants who are "substantially less culpable than the average participant in the criminal enterprise." United States v. Latouf, 132 F.3d 320, 332 (6th Cir. 1997); *see also* U.S.S.G. § 3B1.2, Application Note 3(A). A four-level downward adjustment is intended to be used "infrequently" and is reserved for those defendants "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, Application Note 4. A two-level downward adjustment applies to a defendant who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 5. Mr. Strange must prove the mitigating factors that justify a role-related reduction by a preponderance of the evidence. Latouf, 132 F.3d at 332.

Considering the totality of the circumstances, Mr. Strange failed to satisfy his burden to justify any downward adjustment for his role in the offense. Although Mr. Strange contends that the punitive beating that he applied was less severe than the one administered by the other deputies in the gym, the record does not support such an assertion. Moreover, even if Mr. Strange struck Mr. Easterly fewer times than the other deputies, which is not at all clear from the record, the nature and quality of his offense conduct and culpability cannot be significantly differentiated from the other participants in the beating. Fewer blows does not make Mr. Strange a "minimal" or even a "minor participant. Accordingly, the Court does not apply any downward adjustment for Mr. Strange's role in the offense.

Overruling Mr. Strange's sole objection, awarding Mr. Strange a two-level decrease for acceptance of responsibility, and adopting the PSR guideline calculations, this Court finds that Mr. Strange's guideline range is 27-33 months, based on a total offense level of 18 and a criminal history category of I.

### III.  DOWNWARD DEPARTURES UNDER THE GUIDELINES

In his sentencing memorandum and at the sentencing hearing, Mr. Strange posited a host of reasons for departing downward under the guidelines.  With the exception of a few factors which may never form the basis of a departure, none of which are suggested by Mr. Strange, the guidelines do not "limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case."  United States v. Crouse, 145 F.3d 786, 789-90 (6th Cir. 1998).[4]  Accordingly, this Court may not "categorically exclude any non-prohibited factors from consideration for a downward departure" and must "consider the particular factors of the case as a whole, any combination thereof, in determining whether there were sufficient extraordinary factors to take [Strange's] case out of the 'heartland.'"  United States v. Coleman, 188 F.3d 354, 356 (6th Cir. 1999) (en banc).

In asserting that his case falls outside the heartland, Mr. Strange suggests that the following bases, taken separately and/or together, justify a downward departure in his case: 1) his offense constituted aberrant behavior (U.S.S.G. § 5K2.20); 2) Mr. Easterly's

---

[4] The guidelines specifically provide that a "departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but nevertheless is relevant to determining the appropriate sentence."  U.S.S.G. § 5K2.0(a)(2)(B).

conduct "contributed significantly to provoking the offense behavior" (U.S.S.G. § 5K2.10); 3) Mr. Strange's exceptional charitable good works; 4) the "punishment" Mr. Strange has already received by losing his career in law enforcement and his ability to hunt; 5) his low likelihood of recidivism; 6) Mr. Strange's susceptibility to abuse in prison; and 7) the total offense level "severely overstates the seriousness of the offense." In this case, none of these factors warrant a departure under the guidelines.

Although it is true that Mr. Strange has done charitable works and led a mostly law-abiding life,[5] the Court does not find it appropriate to depart downward on the basis of those charitable works alone.[6] Nor do those works along with other factors suggest that Mr. Strange's punitive beating of Mr. Easterly was aberrant behavior. Considering all pertinent factors, including Mr. Strange's motivation for beating Mr. Easterly and his failure to take any steps to mitigate the effects of his offense, this Court finds an aberrant behavior departure to be unwarranted. There is also no justification for departing due to Mr. Easterly's "provocative" conduct. Although Mr. Easterly did strike another deputy, Mr. Strange did not get involved until after the fight had ended, after all the inmates, including Mr. Easterly, had been returned to their cells, and after the deputies removed Mr. Easterly from his cell for the express purpose of beating him. When Mr. Strange administered his blows, Mr. Easterly was restrained and did not present a danger or threat to him or to

---

[5] In 1997, Mr. Strange was convicted of harassment in Hempfield Township, Pennsylvania.

[6] "Although charitable works normally are not relevant to sentencing decisions," the Sixth Circuit permits consideration of "exceptional" civil involvement and community service as ground for departing downward. Crouse, 145 F.3d at 790; United States v. Tocco, 200 F.3d 401, 433-34 (6th Cir. 2001). Mr. Strange is not that exceptional case.

7

anyone else. Mr. Strange did not reasonably perceive any threat, and Mr. Easterly was not resisting or fighting back. Accordingly, no downward departure for victim conduct is warranted.

As to susceptibility of abuse in prison, courts have only used that as a basis for departing downward in cases in which media coverage of the incident was overwhelming, such as the cases involving Rodney King, Koon v. United States, 518 U.S. 81 (1996), and Abner Louima, United States v. Volpe, 78 F. Supp.2d 76 (E.D. N.Y. 1999). Mr. Strange's case is not an exceptional case where susceptibility to abuse warrants a downward departure. Mr. Strange's arguments regarding recidivism and the collateral consequences he faces as a result of the conviction as justifications for a departure are likewise unpersuasive. *See* Koon, 518 U.S. at 109-11; United States v. Jared, 50 Fed. Appx. 259, 261 (6th Cir. Nov. 1, 2002).

Finally, Mr. Strange's contention that an offense level of 18 "severely overstates the seriousness" of the offense is not only unpersuasive but also disconcerting as it suggests a lack of understanding of the implications of his conduct. Mr. Strange was not merely a private citizen who assaulted another person out of frustration or anger. Rather, Mr. Strange was an officer of the law who abused his position of trust by carrying out a punitive beating of a restrained inmate, thereby violating the person's constitutional rights. The repercussions of Mr. Strange's actions are felt not only by Mr. Easterly but also by society as a whole, undermining respect for the law and for law enforcement officers. Moreover, Mr. Strange's actions are in no way mitigated by the fact that Mr. Easterly committed crimes in the past or even because he committed a crime that very day. A society based

8

upon the rule of law cannot suffer the abuse of its laws by those very individuals entrusted with upholding them.

This Court is satisfied that the sentencing guidelines appropriately reflect these and other considerations in setting the base offense level and applicable enhancements. Thus, no departure is warranted on this basis.

### IV. RYAN STRANGE'S SENTENCE

Although this Court concludes that Mr. Strange's guideline range is 27-33 months and finds no reason to depart under the guidelines from that range, this is no longer, as it once was, the final consideration. In United States v. Booker, 125 S. Ct. 738 (2005), the United States Supreme Court significantly altered the landscape of federal sentencing. To remedy a Sixth Amendment violation flowing from the mandatory nature of the guidelines, the United States Supreme Court severed two provisions of the Sentencing Reform Act of 1984, thereby rendering the guidelines advisory. Id. at 755-57; *see also* United States v. Oliver, 397 F.3d 369, 379-80 (6th Cir. 2005). A sentencing court must now consider guideline ranges, but also may "tailor the sentence" in light of other sentencing factors set forth in 18 U.S.C. § 3553(a). In this post-*Booker* world, sentencing guidelines are true guidelines to be considered and accorded the same weight due the other factors set forth in § 3553(a). United States v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005); Simon v. United States, 2005 WL 711916 (E.D. N.Y. Mar. 17, 2005).[7]

---

[7] While this Court is cognizant of the line of district court cases which have held that the sentencing guidelines provide the "presumptively correct sentence" and should be given "heavy," "substantial," or "great" weight, United States v. Wanning, 354 F. Supp.2d 1056, 1060-62 (D. Neb. 2005);

9

In sentencing Mr. Strange, this Court must therefore impose a sentence which is "sufficient, but not greater than necessary:"

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and,

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). With these purposes in mind, this Court must fashion a sentence which considers:

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the need for the sentence imposed to further the purposes set forth above;

- the kinds of sentences available;

- the kinds of sentence and sentencing range applicable to the defendant as set by the United States Sentencing Guidelines as well as any pertinent policy statements issued by the Sentencing Commission;

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

- the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

---

United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005); United States v. Gray, 2005 WL 613645, (S.D. W.Va. Mar. 17, 2005), it is not persuaded by their reasoning that the guidelines operate as a sort of "super factor" trumping everything else in all but unusual cases.

10

Mr. Strange's punitive beating, under color of law, of Mr. Easterly, resulting in bodily injury, is a serious offense which necessitates a sentence sufficient to punish Mr. Strange, to deter others, and to promote and, given the nature of the offense, restore respect for the law. As this Court explained during the sentencing hearing:

> When people who are supposed to enforce our law, the law, end up violating someone's constitutional rights, it is a very serious thing in a community. It is a serious offense. So to promote respect for the law, we have to overcome the sense of discouragement and sort of chaos that [it] can create in the public, and we have to at the same time provide just punishment for the offense.

The range of imprisonment suggested by the sentencing guidelines both reflects and furthers these considerations. Considering the nature of Mr. Strange's offense, the need for a "sufficient" sentence which furthers the purposes outlined in Section 3553(a)(2), and the guideline range, this Court rejects Mr. Strange's request that he be sentenced to a term of mere probation as such a sentence would be neither sufficient nor appropriate.

At the same time, however, the Court concludes that a sentence within the suggested guideline range of 27 to 33 months is greater than necessary to further the purposes of sentencing and does not fully reflect a consideration of the context or circumstances of the offense as well as the need to avoid unwarranted sentencing disparities. Although in no way excusing Mr. Strange's conduct, his sentence must reflect the nature of the particular institution in which Mr. Strange worked, one in which punitive beatings were apparently condoned and even ordered by superior officers. As explained at sentencing:

> [The Mahoning County Jail] was an institution where there was some kind of attitude, that if somebody struck a deputy or did something to a deputy, there

11

> was going to be a response, and they were going to be punished in a way that would help prevent that kind of situation . . . . [However] when you talk about people who are under restraint and in prison and surrounded by a whole bunch of prison guards, no way can we permit them to be beaten and abused by the very people who are supposed to uphold and enforce our law. It doesn't happen that way.
>
> But I know that was a harder place than most.  And if you had . . . some leadership that was of the kind and quality that I think we expect in general from our law enforcement and that we see in general from our law enforcement, maybe this situation wouldn't have unwound.

With respect to disparity of sentences, this case involved several co-defendants who were convicted of similar offenses and had similar criminal histories, two of whom, Raymond Hull and John Rivera, have already been sentenced.  Mr. Hull, charged in three counts, pled guilty to two and was sentenced to 15 months.  Mr. Rivera, charged in two counts, pled guilty to both and was sentenced to 18 months.  Although it is true, as pointed out by the government, that Hull and Rivera's lower sentences were largely a result of their cooperation with the government which was reflected in a 5K1.1 substantial assistance departure, this Court nonetheless finds the resulting disparity of nine to eighteen months to be unwarranted and unnecessarily severe.

Giving due consideration to all of the factors set forth in Section 3553(a), this Court believes that a 21 month term of imprisonment is the appropriate sentence in this case.

## **V. CONCLUSION**

For the reasons set forth above, defendant Ryan Strange is committed to the custody of the Federal Bureau of Prisons to serve a 21 month term of incarceration with two years of supervised release to follow.

IT IS SO ORDERED.

/s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: <u>20 May 2005</u>